UNITED STATES DISTRICT COURT

NOTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Isaac Foster, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>SERVICE SANITATION, INC.<br><br>    Defendant. | Case No.: 25-CV-02101<br><br>CLASS ACTION |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR ALTERNATIVELY TO STRIKE NATIONWIDE CLASS ALLEGATIONS**

Plaintiff Isaac Foster filed this suit on behalf of himself and all others similarly situated against Defendant Service Sanitation, Inc. ("Service Sanitation") as a result of Service Sanitation's violations of the Illinois Genetic Information Privacy Act, 410 ILCS 513/1, *et seq*. ("GIPA"). Specifically, Service Sanitation required Plaintiff to participate in an employment application process—which Service Sanitation controlled—that involved the solicitation and collection of his genetic information in the form of family medical history of diseases and disorders during a mandatory preemployment physical examination. This is a clear violation of GIPA under the plain language of § 25(c)(1).

Defendant moved to dismiss Plaintiff's Class Action Complaint in its entirety. Service Sanitation argues that Plaintiff has failed to state a GIPA claim because 1) Plaintiff has not alleged Service Sanitation ever acted in any manner that can be characterized as intending to solicit, request, or require genetic information from Plaintiff, 2) family medical history does not constitute "genetic information" under GIPA, and 3) documents it has attached as an exhibit to its motion show Defendant did not do what Plaintiff alleges. Defendant alternatively asks this Court to strike

1

Plaintiff's nationwide class allegations.

Conspicuously absent from Service Sanitation's motion is any recognition, let alone discussion, of numerous recent federal and decisions that have flatly rejected its positions. *See*, *e.g.*, *Collins v. NTN Bearing Corp. of Am.*, 24-CV-6726, 2025 WL 552465, at *2 (N.D. Ill. Feb. 19, 2025) (holding where plaintiff alleged he applied for job with defendant, he had to take a physical exam as part of application process, exam included questions about his genetic information in the form of family medical history, and he was required to answer the questions, allegations were adequate to state a claim under GIPA § 25(c)(1)); *Henry v. AbbVie, Inc.*, 23-CV-16830, 2024 WL 4278070, at *2 (N.D. Ill. Sept. 24, 2024) (same); *Ginski v. Ethos Seafood Grp., LLC*, No. 23-CV-16402, 2024 WL 4265249, at *1 (N.D. Ill. Sept. 23, 2024) (same); *Branson v. Caterpillar, Inc.*, 23-CV-14329, 2024 WL 3823157, at *3 (N.D. Ill. Aug. 14, 2024) (same); *Taylor v. Union Pac. R.R. Co.*, 23-CV-16404, 2024 WL 3425751, at *1 (N.D. Ill. July 16, 2024) (same); *McKnight v. United Airlines, Inc.*, 23-CV-16118, 2024 WL 3426807, at *1 (N.D. Ill. July 16, 2024) (same); *Weller v. Sagility, LLC*, 23-CV-15626, Dkt. 19 (N.D. Ill., Mar. 25, 2024)[1] (same); *Williams v. The Peoples Gas Light and Coke Co.*, 2023 CH 08058 (Cir. Ct. Ill. July 1, 2024)[2] (same). Indeed, Service Sanitation attempts to avoid the prevailing view by ignoring Plaintiff's clear allegations in the Complaint and attaching incomplete and misleading documents that this Court cannot consider at this stage and do not dispositively contradict Plaintiff's claims in any way. At bottom, Plaintiff has articulated a viable GIPA claim with clear, specific, well-pled facts related to Service Sanitation's preemployment practices. Service Sanitation's motion fails on all fronts.

## BACKGROUND

Service Sanitation employs hundreds of employees throughout the Midwest region, many of

---

[1] Attached as Exhibit A.
[2] Attached as Exhibit B.

whom live and work in Illinois. Compl. at ¶ 9. Because it employs employees in Illinois, Service Sanitation is considered an employer under GIPA. *Id.* at ¶ 17; 410 ILCS 513/10. Service Sanitation requires potential employees to submit to physical examinations as part of its hiring process, in which the applicants are asked about their family medical histories, including family history of diabetes, heart disease, or kidney disease. *Id.* at ¶¶ 18, 20, 24, 43. Family medical history is genetic information under GIPA, and GIPA prohibits employers from requesting, soliciting, or requiring potential employees to provide this information as a condition of employment or preemployment application. 410 ILCS 513/10; 45 C.F.R. § 160.103. However, Service Sanitation requires prospective employees to complete these examinations and provide the genetic information as a condition of their preemployment applications. *Id.* at ¶¶ 18, 20, 22, 24, 28.

Plaintiff Foster underwent that exact process when he applied to work for Service Sanitation. *Id*. at ¶ 24. Accordingly, Plaintiff filed this putative class action Complaint in the Circuit Court of Cook County, Illinois on January 21, 2025, alleging Defendant violated GIPA § 25(c)(1) by the actions above. *See* ECF No. 1-1. Service Sanitation removed this action on February 28, 2025, and subsequently moved to dismiss and strike the nationwide class allegations on March 31, 2025. *See* ECF Nos. 1 and 13.

## ARGUMENT

### I.  Legal Standard.

#### A.  Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). The complaint is sufficient, and the motion must fail, when the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the

3

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts accept factual allegations in the complaint as true when deciding a motion to dismiss. *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019) (abrogated on other grounds). "A complaint should only be dismissed if there is no set of facts, even hypothesized, that could entitle a plaintiff to relief." *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007) (citations omitted).

### B. Motion to Strike Class Allegations

Federal Rule of Civil Procedure 23(d)(1)(D) "provides the Court with the ability to require the pleadings to be amended to remove class action allegations." *Bietsch v. Sergeant's Pet Care Prods., Inc.*, 15-CV-5432, 2016 WL 1011512, at *10 (N.D. Ill. Mar. 15, 2016). However, motions to strike class allegations at the pleading stage are only appropriate "where it is clear from the pleadings that the class claims are defective." *Id.* "[I]f the issues concerning class certification are factual, requiring discovery to determine whether certification is appropriate, a motion to strike class allegations at the pleading stage is premature." *Id.*; *see also Garrard v. Rust-Oleum Corp.*, 575 F. Supp. 3d 995, 999 (N.D. Ill. 2021).

## II. The Complaint States an Actionable Claim Under § 25(c)(1) of GIPA.

### A. Plaintiff adequately pleads that Defendant intentionally requested his genetic information as a condition of his preemployment application.

Service Sanitation first argues that Plaintiff has failed to state a claim because "[t]here is nothing factual alleged in the complaint to support the conclusions that [Service Sanitation] was involved in any alleged solicitation of genetic information or that any solicitation was an intentional act and a condition of employment at [Service Sanitation]." ECF No. 14 at 3, 7. In doing so, Defendant ignores Plaintiff's numerous allegations throughout the complaint that detail how Defendant did just that.

Section 25(c)(1) of GIPA provides that no employer shall directly or indirectly "solicit,

request, require or purchase genetic testing or genetic information of a person or a family member of the person, or administer a genetic test to a person or a family member of the person as a condition of employment, preemployment application, labor organization membership, or licensure." 410 ILCS 513/25(c)(1). GIPA defines "genetic information" in relevant part as information pertaining to: (i) an individual's genetic tests; (ii) the genetic tests of family members of the individual; or (iii) *the manifestation of a disease or disorder in family members of such individual*. 410 ILCS 513/10, by reference to 45 C.F.R. § 160.103 (emphasis added).

Plaintiff alleges each element of a claim under § 25(c)(1) of GIPA. Plaintiff alleges that Defendant required him to undergo a physical examination as a condition of his pre-employment application. Compl. ¶ 24. Plaintiff further alleges that at that physical examination, Defendant required Plaintiff to provide information concerning his family medical history, specifically whether his family members had a history of diabetes, heart disease, kidney disease and other medical conditions. *Id*. In response to those questions, Plaintiff disclosed his genetic information, including diseases and disorders with which his family members have been diagnosed, in order to apply for employment with Defendant. *Id.* at ¶ 25. Defendant did not instruct Plaintiff to refuse to answer questions about his genetic information, and he was required to answer the questions. *Id.* at ¶ 27. Defendant made the decisions regarding what the physical examination would entail and the information that prospective employees would be requested and/or required to provide. *Id.* at ¶ 20. And finally, Plaintiff alleges that this practice was a standardized hiring process that Defendant requires all prospective employees to undergo. *Id.* at ¶ 18. These allegations are adequate to state a claim under GIPA § 25(c)(1). *See supra*, at 2, listing cases.

Instead of addressing the numerous cases that hold allegations just like Plaintiff's are sufficient to state a claim under § 25(c)(1), Defendant attached a selection of unverified documents to its motion and argues that Plaintiff has not stated a claim because these documents—cherry-picked

by Defendant—show Defendant did not do what Plaintiff alleges.

Defendant's argument is one for summary judgment and not appropriate for a motion to dismiss. A motion to dismiss pursuant to Fed. R. Civ. P, 12(b)(6) tests the sufficiency of the complaint, not its merits. *Camasta*, 761 F.3d at 736. This Court should reject entirely Defendant's attempt to litigate the merits of the Plaintiff's claim at this stage.

Further, this Court cannot consider Defendant's exhibit on a motion to dismiss. If "on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). In such case, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*.

While Seventh Circuit has carved out a "narrow exception," to this rule, it does not apply here. Under the exception, district courts are permitted to examine documents attached to a motion to dismiss if they are "referred to in the complaint," "central to the plaintiff's claim," *and* "concededly authentic.*" Tierney v. Vahle,* 304 F.3d 734, 738 (7th Cir. 2002). However, "this is a narrow exception aimed at cases interpreting, for example, a contract." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). It "is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Tierney,* 304 F.3d at 738 (internal quotations omitted). Importantly, a document in support of a Rule 12(b)(6) motion "that require[s] discovery to authenticate or disambiguate" it would require a judge "to convert the defendant's motion to a Rule 56 motion if he were minded to consider the document in deciding whether to grant the motion." *Krepps v. NIIT (USA), Inc.*, 11-CV-8787, 2012 WL 1532227, at *3 (N.D. Ill. May 1, 2012) (citing *Tierney,* 304 F.3d at 739).

Defendant's proffered documents do not fall under this narrow exception. They are not referred to in Plaintiff's complaint or central to his claim and require discovery to authenticate and

6

disambiguate them. Defendant attached three documents comprising Exhibit A—a Procedure Summary form, a Specimen Result Certificate, and a Yard Laborer Physical Ability Test form. ECF No. 14 at 9. First, the Complaint does not reference any of these documents. The Complaint discusses a physical examination, and what occurred during that examination, but Plaintiff does not allege that Defendant's violation of GIPA was reduced to one of these forms. Second, these forms are not central to Plaintiff's claim because the claim does not rely on the existence of written forms. This is not a case of the ilk of interpreting a contract; the claim is not based on the existence of these documents. On the contrary, a violation of GIPA does not require that an employer or someone acting on behalf of the employer commit the requested genetic information to a form. Other evidence can and does exist that supports Plaintiff's allegations.

Finally, the forms are not concededly authentic, or importantly, complete, and discovery is required to disambiguate them. Indeed, the face of the documents show they are not all the records that exist from Plaintiff's preemployment physical examination. First, the "Procedure Summary" refers to a "health history questionnaire" and "physical examination". *See* ECF No. 14, Exhibit A at 1 ("The following recommendation is based on 1 Source's complete review of the health history questionnaire, physical examination, diagnostic testing, and/or specific requirements of the position applied for or occupied by the Examinee."). Defendant did not provide the health history questionnaire, nor do the records make clear whether this "physical examination" is different from the "physical ability test" or "physical" listed elsewhere on the Procedure Summary, and if so, how. Additionally, the "Specimen Result Certificate" shows the test was conducted at PromptMed Urgent Care, but Defendant provided no records from PromptMed Urgent Care itself. Any of those missing records could have evidence supporting Plaintiff's claim. Further, the documents are from Defendant, and not from the third party who allegedly completed the forms. Notably, Defendant did not include any declaration testifying to their authenticity and completeness, or explaining the information

contained within (although admittedly, this would also be improper in a motion to dismiss). As such, Plaintiff cannot attest to their authenticity. For these reasons, the documents are not "concededly authentic", and discovery is required "to authenticate or disambiguate" them.

For the above reasons, the documents comprising Exhibit A do not fall into the narrow exception to Fed. R. Civ. P. 12(d) and this Court cannot consider them.[3] If this Court does consider them, the motion must be converted to one for summary judgment, and this Court must allow Plaintiff discovery and "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Even if this Court could consider the documents in Exhibit A, in order for them to control over the allegations in the complaint, which this Court must take as true otherwise, they must "incontrovertibly contradict[] the allegations." *Bogie*, 705 F.3d at 609. They do not. Instead, they confirm that Plaintiff underwent at least a "Physical Ability Test" and another undefined "physical examination" and completed a "health history questionnaire." That Page 1 states that no "Physical" was completed incontrovertibly contradicts nothing, particularly without further explanation of what that is and how it differs from the "Physical Ability Test" and "physical examination" that the form suggests Plaintiff underwent. Plaintiff does not allege that Defendant requested his genetic information as part of the "Physical" as opposed to as part of the "Physical Ability Test", "physical examination" or "Health History Questionnaire" done during the physical exam, such that these

---

[3] Defendant's cases do not hold otherwise and are easily distinguishable. In both *Bogie v. Rosenberg*, 705 F.3d 603 (7th Cir. 2013) and *Forrest v. Universal Savings Bank, F.A.*, 507 F.3d 540 (7th Cir. 2007), the plaintiffs attached the documents to the complaint, and they thus unquestionably fell under the exception. In *Andersen v. Vill. of Glenview*, 821 F. App'x 625 (7th Cir. 2020), the plaintiff did not contest the authenticity of recordings attached, and the exhibits were the exact and complete items relied upon by the relevant party. In *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 430 (7th Cir. 1993) and *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009) the documents were referenced explicitly in the complaints. And finally, in *Krepps*, 2012 WL 1532227, at *4 (N.D. Ill. May 1, 2012), the district court found the document did *not* fall under the narrow exception to Rule 12(d), even though it was referenced in the complaint and central to the claim, because the plaintiff contested its authenticity.

records contradict any of Plaintiff's allegations. And because the exhibit is not complete and Defendant could have violated GIPA exactly in the way Plaintiff alleges without documenting the violation on these forms, that the forms do not themselves show the violation does not incontrovertibly contradict Plaintiff's claims either. Because the documents in the exhibit do not incontrovertibly contradict Plaintiff's allegations, they do not control. This Court must take as true the allegations in the complaint. And Plaintiff has sufficiently alleged Defendant violated § 25(c)(1) of GIPA. Defendant's motion should be denied.

> B. **Plaintiff adequately pleads that the information Defendant requested as part of Plaintiff's preemployment application is genetic information protected by GIPA.**

Defendant further argues that Plaintiff has failed to state a claim because what Plaintiff alleges Defendant requested is not genetic information. Defendant argues that the definition of "genetic information" with respect to a manifestation in family members of diseases or disorders should be narrowed to mean only those diseases or disorders that are potentially inheritable. *See* ECF No. 14 at 10–12. Defendant then argues that the medical conditions Plaintiff alleges Defendant asked about—specifically diabetes, heart disease, kidney disease and other medical conditions—are not inheritable diseases or genetic in nature, and as such, that information does not constitute genetic information. *See* DE 14 at 10–12.

Defendant's argument fails for two reasons. First, Defendant's position is contrary to GIPA's text. GIPA defines "genetic information" in relevant part as information pertaining to "an individual's genetic tests" or "the manifestation of a disease or disorder in family members of such individual." 410 ILCS 513/10, by reference to 45 C.F.R. § 160.103. It further defines "genetic tests" as "an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, if the analysis detects genotypes, mutations, or chromosomal changes. Genetic test does not include an analysis of proteins or metabolites that is directly related to a manifested disease, disorder, or pathological condition." *Id.*

9

In looking at the plain text, GIPA does not limit the category of family history of disease or disorder to only inheritable diseases or disorders. While medical information about an employee's *own* diseases or disorders is not protected under GIPA if it is not information from a genetic test, there's no similar limitation about the diseases and disorders of an employee's family members. In other words, the manifestation of a disease, disorder, or pathological condition in *oneself* is not genetic information. But this exclusion of non-genetic medical information about a manifested disease, disorder, or pathological condition only applies to the individual employee; it does not apply to an employee's family members. Consequently, "[a] request for an employee's family medical history, even without explicit reference to a disease or disorder suggesting genetic predisposition, is a request for genetic information under GIPA." *Branson*, 2024 WL 3823157, at *3 (N.D. Ill. Aug. 14, 2024); *see also Henry*, 2024 WL 4278070, at *5–8 (N.D. Ill. Sept. 24, 2024) ("[GIPA] does not limit the category of 'family medical history' to inherited diseases or disorders.").

Second, even if "genetic information" requires the disease or disorder in a family member to be inheritable, Plaintiff has sufficiently pled such. Diabetes, heart disease, and kidney disease are certainly inheritable and genetic in nature. *Ginski*, 2024 WL 4265249, at *8 (N.D. Ill. Sept. 23, 2024) ("Because the conditions at issue here—history of high blood pressure, cancer, diabetes, heart disease, and other medical conditions—might suggest Plaintiffs' own predispositions to contract [those conditions], [Plaintiff] has adequately alleged Defendants solicited genetic information for purposes of a GIPA claim.") (internal quotations omitted). And Defendant ignores, once again, the numerous cases in this district that have found that allegations of the same conditions Plaintiff pleads here are sufficient to plead a claim under § 25(c)(1) of GIPA. *See, e.g.*, *Ginski*, 2024 WL 4265249, at *8 (N.D. Ill. Sept. 23, 2024); *McKnight*, 2024 WL 3426807, at *2-3 (N.D. Ill. July 16, 2024) (holding allegations that information solicited consisted of family history of high blood pressure, cancer, and *heart disease* sufficient to state claim under GIPA § 25(c)(1)) (emphasis added); *Taylor*, 2024 WL

10

3425751, at *4-5 (N.D. Ill. July 16, 2024) (holding allegations that defendant solicited or requested family histories of "*cardiac health*, cancer, and *diabetes*, among other conditions" sufficient to allege request of genetic information under GIPA) (emphasis added); *Sagility, LLC*, 23-CV-15626, at 1 (same); *People's Gas*, 2023 CH 08058, at 3 (same).

Defendant did not and cannot cite a single case where a court held that information about family history of heart disease, kidney disease, diabetes, and other medical conditions—the conditions Plaintiff alleges here—did not constitute "genetic information" under GIPA. Because no court has found such. Instead, Defendant selects readily distinguishable cases interpreting the definition of genetic information in the federal Genetic Information Nondiscrimination Act ("GINA") to try to argue that these cases show that the diseases Plaintiff alleges Defendant asked him about are not inheritable diseases.[4] However, the cases interpreting GINA support denying Defendant's motion, as courts have consistently ruled that heart disease and diabetes—two of the conditions Plaintiff lists in the complaint—constitute genetic information under GINA. *See*, *e.g.*, *Lee v. City of Moraine Fire Dept.*, 13-CV-222, 2015 WL 914440, at *11 (S.D. Ohio Mar. 3, 2015) (granting summary judgment to plaintiff on GINA claim where questionnaire asked about family history of heart disease); *EEOC v. Grisham Farm Products, Inc.*, 191 F. Supp. 3d 994, 998 (W.D. Mo. 2016) (same for high blood pressure, heart disease, breast cancer, or family history and risk factors); *EEOC v. Dolgencorp, LLC*, 17-CV-01649-MHH, 2022 WL 2959569, at *16 (N.D. Ala. July 26, 2022) (same were employer asked its job candidates "whether their grandparents, parents, or children had significant medical problems").

Defendant's cases merely establish that an individual's *own* manifested medical condition and family conditions which the plaintiffs had "no chance" of acquiring in the future do not constitute

---

[4] GINA's definition of "genetic information", like GIPA, includes "an individual's genetic tests" and "information about the manifestation of a disease or disorder in an individual's family members." 42 U.S.C. § 2000ff.

11

"genetic information" under GINA. *See Munnerlyn v. Installed Bldg. Prod., LLC*, 20-CV-225-LY, 2020 WL 2528547, at *3 (W.D. Tex. May 18, 2020), *report and recommendation adopted as modified*, 20-CV-225-LY, 2020 WL 10056135 (W.D. Tex. June 15, 2020) (dismissing GINA claim based on plaintiff's *own* epilepsy diagnosis, holding employer does not "violate GINA through 'the use, acquisition, or disclosure of *medical information* that is not genetic information about a manifested disease, disorder, or pathological condition of an employee or member'") (internal citations omitted); *Duignan v. City of Chicago*, 275 F.Supp.3d 933, 939 (N.D. Ill. 2017) (dismissing GINA claim based on plaintiff's own Huntington's disease diagnosis); *Bell v. PSS World Medical, Inc.*, 12-CV-381, 2012 WL 6761660 (M.D. Fl. 2012) (dismissing GINA claim based on plaintiff's own hyperthyroidism condition); *Graves v. Brookfield Suites Hotel & Convention Ctr.*, 2012 WL 3941774 (E.D. Wis. 2012) (dismissing GINA claim based on plaintiff's own injury to leg); *Dumas v. Hurley Med. Ctr.*, 837 F. Supp. 2d 655 (E.D. Mich. 2011) (dismissing GINA claim based on plaintiff's own disabilities); *Tedesco v. Pearson Educ., Inc*, 21-CV-199, 2021 WL 2291148 (E.D. La. Jun. 6, 2021) (holding plaintiff did not sufficiently allege that her father's suicide was genetic, but recognized that other manifestations of diseases, such as cancer are genetic information under GINA); *Conner-Goodgame v. Wells Fargo Bank*, 2013 WL 5428448 (N.D. Ala. 2013) (holding plaintiff's deceased mother's AIDS diagnosis was not genetic information under GINA as plaintiff had no future risk of obtaining HIV from her deceased mother). Such is not the case here.

      In sum, the plain text of GIPA makes clear that genetic information includes information about the manifestation of disease or disorders in family members, regardless of whether the disease or disorder is potentially inheritable. Plaintiff has alleged such here. Further, even if the family member's disease or disorder is required to be genetic in nature, those diseases about which Plaintiff alleges Defendant required him to give his family history—heart disease, kidney disease, and diabetes—are potentially inheritable. *See Ginski*, 2024 WL 4265249, at *8 (N.D. Ill. Sept. 23, 2024); *McKnight*,

12

2024 WL 3426807, at *2-3 (N.D. Ill. July 16, 2024); *Taylor*, 2024 WL 3425751, at *4-5 (N.D. Ill. July 16, 2024); *Sagility, LLC*, 23-CV-15626, at 1; *People's Gas*, 2023 CH 08058 at 3; *Grisham*, 191 F. Supp. 3d at 998; *Dolgencorp*, LLC, 2022 WL 2959569, at *16; *City of Moraine Fire Dept.*, 2015 WL 914440, at *11. Plaintiff has sufficiently alleged the information requested was genetic information under GIPA.[5] Defendant's motion should be denied.[6]

### III. Plaintiff has pled sufficient facts to support its nationwide class allegations.

Defendant finally argues that this Court should strike the nationwide class because "GIPA does not apply extraterritorially." ECF No. 14 at 12. Defendant's motion is premature and should be denied. Defendant does not cite a single case that holds GIPA cannot be applied to out-of-state class members and ignores the directly-on-point case from this district that rejects its precise argument. *See McKnight*, 2024 WL 3426807, at *5–6 (N.D. Ill. July 16, 2024) (denying motion to dismiss GIPA § 25(c)(1) claim of Maryland plaintiff interviewing for a job in Virginia where plaintiff alleged that defendant's solicitation of her protected genetic information occurred from its headquarters in Illinois, by recruiters in Illinois; holding allegations were sufficient to warrant further discovery, and

---

[5] Defendant also argues that Plaintiff fails to state a claim because the Complaint does not allege what family medical history Plaintiff disclosed during the pre-hire testing. ECF No. 14 at 12. Defendant cites nothing in support that a claim under GIPA requires a plaintiff to make such allegations. Indeed, nothing in the text of the statute suggests that a GIPA violation requires the applicant to disclose information.

[6] Defendant mentions, without arguing, that an inadvertent request is not a violation of GIPA. ECF No. 14 at 8. However, inadvertent disclosure is an affirmative defense and is not an element of Plaintiff's claim. *See Henry*, 2024 WL 4278070, at *2 ("The inadvertent disclosure exception is not an element of a plaintiff's claim. It is an affirmative defense."). Plaintiff is not required to address potential affirmative defenses in the complaint. *Id.*; *see also Collins*, 2025 WL 552465, at *2–3 (N.D. Ill. Feb. 19, 2025) ("The inadvertence exception cannot form the basis for dismissing a GIPA claim at [the pleading] stage.") Even if Plaintiff were required to plead inadvertence, Plaintiff has adequately pled that Service Sanitation's request for medical history was not inadvertent. Plaintiff alleges that at the physical examination Defendant specifically required him to provide information concerning his family medical history; this is not the case where Plaintiff gave a broad response to a narrow question of his own medical history. Compl. ¶ 24. This is sufficient to allege, at the motion to dismiss stage, that Service Sanitation's request was not inadvertent. *See Henry*, 2024 WL 4278070, at *8 (plaintiff adequately pled defendant's request for family medical history was not inadvertent where alleged that person conducting physical on behalf of defendant specifically asked about family medical history).

13

"applying the extraterritoriality doctrine is best left for summary judgment.").

Motions to strike class allegations at the pleading stage are only appropriate "where it is clear from the pleadings that the class claims are defective." *Bietsch*, 2016 WL 1011512, at *10 (N.D. Ill. Mar. 15, 2016). "[I]f the issues concerning class certification are factual, requiring discovery to determine whether certification is appropriate, a motion to strike class allegations at the pleading stage is premature." *Id.*

It is not clear from the pleadings that the nationwide class claim is defective based on the extraterritoriality doctrine. Under the extraterritoriality doctrine, Illinois statutes do not have "extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184–85 (2005) (citations omitted). Plaintiff agrees GIPA does not have extraterritorial effect. However, as Defendant concedes, an out-of-state plaintiff can sue under GIPA and avoid the extraterritoriality doctrine altogether if "the circumstances that relate to the disputed transaction occur[red] primarily and substantially in Illinois." *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009) (citing *Avery*, 835 N.E.2d at 853–54); *see* ECF No. 14 at 13. Whether disputed transactions occurred "primarily and substantially in Illinois" is a "highly fact-bound inquiry" with no "bright-line rule." *Id.* The core question is whether "most of the relevant circumstances underlying the alleged" statutory violation had a "connection to Illinois." *Crichton*, 576 F.3d at 396. Thus, at the pleadings stage, if a plaintiff sufficiently alleges that the disputed transaction occurred "primarily and substantially in Illinois", then further discovery on the extraterritoriality issue is warranted, and the court must deny the motion to strike. *See McKnight*, 2024 WL 3426807, at *5–6 (N.D. Ill. July 16, 2024).

Here, Plaintiff has made sufficient allegations that most of the relevant circumstances underlying the violation had a connection to Illinois to warrant further discovery. Plaintiff alleges that 1) "Defendant devised and implemented this national hiring policy [of requiring all prospective

14

employees to undergo a physical examination and answer questions regarding their family medical history] at its headquarters in Illinois", 2) Defendant "directed that its human resource staff at all its locations nationwide execute this policy . . . from its headquarters in Illinois", 3) "Defendant made the decisions regarding what the physical examination would entail, and the information that prospective employees would be requested and/or required to provide, from its headquarters in Illinois", 4) Defendant failed to inform Plaintiff and the members of the putative Classes of their right not to provide their genetic information during the process of applying for employment with Defendant from its corporate headquarters in Illinois, and 5) Defendant's soliciting, requesting, and/or requiring that Plaintiff and all members of the putative Classes provide their genetic information to Defendant as a condition of applying for employment, without first informing Plaintiff or any member of the putative Classes of their right not to provide such information, occurred in Illinois, pursuant to standardized policies and practices implemented, maintained, executed, overseen, and controlled by Defendant from within Illinois.[7] Compl. ¶ 18, 19, 20, 22.

Consequently, just like in *McKnight*, Plaintiff alleges enough here to warrant further

---

[7] Defendant asserts in its notice of removal (ECF No. 1 at 5) and its Motion to Dismiss (DE 14 at 14) that its headquarters are in Indiana. Plaintiff alleges in the Complaint that Defendant's headquarters are in Illinois. Plaintiff attaches Defendant's most recent corporate filings with the Secretaries of State of Illinois and Indiana as Exhibits C and D, and asks this Court to take judicial notice of them for purposes of the Motion to Dismiss. *See Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022) ("It's well established that judges may take judicial notice of matters of public record when ruling on a motion to dismiss."). Exhibit C is Defendant's most recent Domestic Corporation Annual Report, for 2022, filed with the Illinois Secretary of State, publicly available at https://apps.ilsos.gov/businessentitysearch/, stating Defendant's principal address is in Homewood, Illinois. Exhibit D is Defendant's most recent Business Entity Report, for 2023 and 2024, filed with the Indiana Secretary of State, publicly available at https://bsd.sos.in.gov/publicbusinesssearch, also stating Defendant's principal office address is in Homewood, Illinois.

Further, even if Defendant is currently headquartered in Indiana and makes current hiring decisions from Indiana, the statutory period under GIPA is five years, and it is clear from Defendant's corporate filings that it was headquartered in Illinois for a substantial amount of time within that five-year period. Consequently, this is a matter that needs additional discovery and this Court should not strike class allegations at this stage based on Defendant's contradictory assertions about the location of its headquarters.

discovery, and "applying the extraterritoriality doctrine is . . . best left for summary judgment." *McKnight*, 2024 WL 3426807, at *5–6 (N.D. Ill. July 16, 2024), citing *Mahmood v. Berbix, Inc.*, 22-CV-2456, 2022 WL 3684636, at *2 (N.D. Ill. Aug. 25, 2022); *see also Rivera v. Google Inc.*, 238 F.Supp.3d 1088, 1101 (N.D. Ill. 2017) (noting numerous issues "needing further factual refinement" to determine extraterritoriality defense); *Vance v. Microsoft Corp.*, 525 F. Supp. 3d 1287, 1292 (W.D. Wash. 2021) (noting that the extraterritoriality doctrine, in the context of another Illinois privacy statute, "is generally inappropriate for the motion to dismiss stage"); *Polizzi v. Jimmy John's, LLC*, 23-CV-2168, DE 24 (C.D Ill. July 17, 2024)[8] (denying motion to dismiss based on extraterritoriality doctrine as applied to Illinois's Biometric Information Privacy Act, where plaintiffs "alleged that the extraction, collection, analysis, and use of their voiceprints all occurred at Defendant's headquarters in Illinois.").

This Court should deny Defendant's motion to strike the nationwide class.

Date: April 29, 2025

Respectfully submitted,

*/s/ Julie Holt*
Julie Holt
HEDIN LLP
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
jholt@hedinllp.com

Carl V. Malmstrom
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC
ARDC No. 6295219
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Tel: (312) 984-0000
Fax: (212) 686-0114
malmstrom@whafh.com

*Attorneys for Plaintiff and the Putative Class*

---

[8] Attached as Exhibit E.