# EXHIBIT E

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| **DOMINICK POLIZZI, RACHEL ROBIDOUX, and GEORGIA BAIN, on behalf of themselves and all others similarly situated,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) | **Case No. 23-CV-2168** |
| | ) | |
| **JIMMY JOHN'S, LLC,** | ) ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

Plaintiffs, Dominick Polizzi, Rachel Robidoux, and Georgia Bain, on behalf of themselves and others similarly situated, filed their class action Second Amended Complaint (#13) against Defendant, Jimmy John's LLC, on October 18, 2023, alleging violations of the Illinois Biometric Information Privacy Act ("BIPA") (740 Ill. Comp. Stat. 14/15(a) and (b)). Defendant filed a Motion to Dismiss (#16) on November 1, 2023. Plaintiffs' Response (#19) was filed November 29, 2023.

### BACKGROUND

The following background is taken from the allegations in Plaintiffs' Second Amended Complaint ("SAC"). At this stage of the proceedings, the court must accept as true all material allegations of Plaintiffs' SAC, drawing all reasonable inferences therefrom in Plaintiffs' favor. See *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016).

Plaintiff Polizzi is a resident of Illinois. Plaintiff Robidoux is a resident of Tennessee. Plaintiff Bain is a resident of Georgia. Defendant is a corporation whose headquarters are in Champaign, Illinois. This case is in federal court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), et seq., because "this case is a class action" wherein the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are greater than 100 putative class members; at least one putative class member is a citizen of a state other than that of Defendant; and none of the exceptions under § 1332(d) apply."

Overview

Plaintiffs allege that, in direct violation of § 15(b)(1) of BIPA, Defendant utilized technology at its drive-throughs (at numerous locations in Illinois and across the country) that recorded each of its customers' voices and then extracted from each voice recording a "voiceprint" that corresponds to the unique attributes of that customer's voice, such as the specific pitch, volume, and duration of their voice (among other anatomical and acoustic factors), and then stored that voiceprint at its corporate headquarters in Illinois, all without informing anyone of this practice in writing. Plaintiffs allege that Defendant engaged in these practices to increase its revenue, by way of better-targeted marketing and up-selling to these customers and increased drive-through operation efficiency made possible with this immutable biometric data.

Plaintiffs allege that, in direct violation of §§ 15(b)(2) and (b)(3) of BIPA, Defendant never informed customers of the specific purpose and length of term for which their biometric identifiers or information would be collected, stored, and used, nor did Defendant obtain a written release from any of these individuals. Plaintiffs

2

further allege that in violation of § 15(a) of BIPA, Defendant does not have written, publicly available policies identifying its retention schedules, or guidelines for permanently destroying any of these biometric identifiers or biometric information.

<u>Plaintiffs' Alleged Experiences</u>

During the relevant time period, Defendant recorded each of the Plaintiffs' voices, and extracted, collected, and stored (in Illinois) each of their voiceprints, while they placed orders at drive-throughs at one or more of Defendant's establishments.

Plaintiff Polizzi used drive-throughs at Defendant's establishments in Champaign and Urbana, Illinois, more than 20 times during the relevant time period, including, upon information and belief, at establishments where Defendant's voiceprint technology was utilized.  After Defendant obtained Plaintiff Polizzi's voice recording, Defendant extracted from the recording (using technology operated from its corporate headquarters in Illinois) and collected (also using its technology operated from its corporate headquarters in Illinois) his "voiceprint"—a unique, immutable, and highly sensitive biometric identifier used to identify a person.  Accordingly, Defendant collected, from within Illinois, the "biometric identifiers" of Plaintiff Polizzi and numerous of its other customers whose voices were recorded while placing an order at a drive-through at one of its locations in Illinois or across the country.

Plaintiff Robidoux used the drive-through at Defendant's establishments in Lafayette and West Lafayette, Indiana, more than five times during the relevant time period, including, upon information and belief, at establishments where Defendant's voiceprint technology was utilized.  After Defendant obtained Plaintiff Robidoux's voice recording, Defendant extracted her voiceprint from the recording (using

technology operated from its corporate headquarters in Illinois) and collected it. Accordingly, Defendant collected, from within Illinois, the "biometric identifiers" of Plaintiff Robidoux and numerous of its other customers whose voices were recorded while placing an order at a drive-through at one of its locations in Illinois or across the country.

Plaintiffs make similar allegations regarding Plaintiff Bain, although he used a drive-through in Cordova, Tennessee.

After collecting each of the Plaintiff's voiceprints, Defendant, from within Illinois, stored and catalogued each of their voiceprints in a vast electronic database of personally identifying biometric data located at its corporate headquarters in Champaign. Plaintiffs allege that Defendant developed and used the technology that extracted and stored Plaintiffs' and its other customers' biometric identifiers and biometric information at issue in this case from within Illinois, at its corporate headquarters in Champaign.

With technology operated and maintained by Defendant at its corporate headquarters in Illinois, Defendant has used (and continues to use) the voiceprints it collected from Plaintiffs and its other customers to, inter alia, identify these customers when they are placing a new order, track their ordering habits, market products to them, and otherwise generate revenue from them more efficiently, all of which Defendant does from within Illinois. This technology works by comparing the voiceprints of customers whose voices are recorded while placing an order at a drive-through with the voiceprints already saved in Defendant's vast biometrics database. Specifically, when one of the Plaintiffs' or another of Defendant's customers'

4

voices is recorded at one of Defendant's drive-throughs, Defendant's sophisticated voice recognition technology, located in Illinois, extracts from the recording a voiceprint for the customer's voice and then compares the generated voiceprint against the voiceprints already stored in its database, which is also located in Illinois. If there is a match, then Defendant is able to confirm the identity of the customer using its platform, which operates from servers located in Illinois, enabling Defendant to track the customer's ordering habits and better market and sell products to the customer, as well as further improve the quality of the customer's voiceprint stored in its Illinois-based database.

Plaintiffs allege that, upon information and belief, the unique voiceprints that Defendant has collected from Plaintiffs and other customers across the country are not only used by Defendant to identify these customers by name, they are also used by Defendant to recognize the customer's gender, age, and location–tasks that Defendant also performs using technology at its corporate headquarters in Illinois. Accordingly, Defendant collected, from within Illinois, the "biometric information" of Plaintiffs and its other customers whose voices were recorded, and whose voiceprints were extracted from such recordings, while frequenting Defendant's drive-throughs in Illinois and across the country where this invasive technology is utilized.

Defendant never provided any of the Plaintiffs or its other customers with, nor did any of the Plaintiffs or Defendant's other customers ever sign, a written release allowing Defendant to collect or store their unique biometric identifiers or biometric information. From its corporate headquarters in Illinois, Defendant could have, but failed to, provide Plaintiffs and its other customers with such written releases to sign.

And the written releases that Defendant should have asked Plaintiffs and Defendant's other customers to sign prior to collecting and storing their biometrics would have been provided by any willing customers to Defendant at its corporate headquarters in Illinois. Accordingly, Defendant failed to obtain the requisite written releases prior to collecting and storing Plaintiffs' and its other customers' biometrics.

Further, none of the Plaintiffs or Defendant's other customers ever consented, agreed, or gave permission–written or otherwise–to Defendant for the collection or storage of their unique biometric identifiers or biometric information. Thus, Defendant also failed to obtain any other form of consent prior to collecting and storing Plaintiffs' and its other customers' biometrics.

Likewise, prior to collecting their voiceprints and associated personally identifying information, Defendant never published the requisite policies or disclosures or provided Plaintiffs or its other customers an opportunity to prohibit or prevent the collection, storage, or use of their unique biometric identifiers or biometric information.

Defendant could have, but failed to, publish such policies and disclosures and to provide Plaintiffs and its other customers an opportunity to prohibit or prevent the collection, storage, or use of their unique biometric identifiers or biometric information. Accordingly, Defendant failed to publish such policies and disclosures and to provide Plaintiffs and its other customers an opportunity to prohibit or prevent the collection, storage or use of their unique biometric identifiers or biometric information.

By collecting Plaintiffs' unique biometric identifiers or biometric information without their consent, written or otherwise, from within Illinois, Defendant invaded Plaintiffs' statutorily protected rights to maintain control over their biometrics.

6

Finally, Defendant never provided Plaintiffs with a retention schedule and/or guidelines for permanently destroying their biometric identifiers and biometric information.

In Count I, Plaintiffs allege that Plaintiffs and the Nationwide Class members are individuals who had their "biometric information" collected by Defendant (via technology developed, operated, and utilized from within Illinois) and stored by Defendant (in Illinois) in the form of digitally encrypted code, derived from Plaintiffs' voiceprints, that uniquely identifies the individual to whom a particular voiceprint belongs.

Plaintiffs allege that Defendant systematically collected, used, and stored Plaintiffs' biometric identifiers and/or biometric information without first obtaining the written release required by § 15(b)(3)–written releases that should have been, but were not, obtained by Defendant from its corporate headquarters in Illinois.

In fact, Plaintiffs assert, Defendant failed to properly inform Plaintiffs in writing that their biometric identifiers and/or biometric information were being collected, stored, or otherwise obtained, nor did Defendant inform Plaintiffs in writing of the specific purpose and length of time for which their biometric identifiers and/or biometric information was being collected, stored, and used, as required by §§ 15(b)(1)-(2)–policies and disclosures that should have been, but were not, made by Defendant from its corporate headquarters in Illinois.

In addition, Plaintiffs allege Defendant failed to publicly provide a retention schedule or guidelines for permanently destroying the biometric identifiers and/or biometric information of Plaintiffs, as required by BIPA–a schedule and guidelines that

should have been, but were not, provided by Defendant from its corporate headquarters in Illinois pursuant to § 15(a). The failure by Defendant to provide Plaintiffs with a retention schedule or guidelines for permanently destroying Plaintiffs' biometric identifiers or biometric information constitutes an independent violation of the statute that occurred in Illinois.

The allegations in Count II mirror those of Count I, but apply only to Plaintiff Polizzi and the Illinois class.

ANALYSIS

Defendant argues that Plaintiffs' SAC should be dismissed because: (1) the extraterritoriality doctrine bars Plaintiffs Robidoux's and Bain's BIPA claims; (2) applying BIPA to conduct in Indiana and Tennessee would violate the Dormant Commerce Clause of the U.S. Constitution; (3) the SAC fails to allege that Defendant took an "active step" to collect Plaintiffs' biometric information; and (4) the § 15(a) claims must fail because Plaintiffs do not allege any other basis of possession. Defendant also argues that, should the court grant its Motion, Plaintiffs should not be given leave to amend.

Plaintiffs respond that Defendant's claims that the SAC pleads "implausible allegations" fundamentally misunderstands federal pleading standards. Plaintiffs argue that: (1) Defendant violated BIPA in Illinois because the circumstances relating to the violations occurred primarily and substantially within Illinois; (2) BIPA does not violate the Dormant Commerce Clause because the statute does not impact commerce

8

outside Illinois; (3) the SAC adequately alleges that Defendant took an "active step" in collecting Plaintiffs' biometrics in violation of BIPA; and (4) Plaintiffs adequately allege that Defendant violated § 15(a) of BIPA.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of a pleading if it fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "Dismissal for failure to state a claim under Rule 12(b)(6) is proper 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'" *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). "[T]he complaint must contain allegations that 'state a claim to relief that is plausible on its face' or it is subject to dismissal under Rule 12(b)(6)." *Virnich*, 664 F.3d at 212, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The complaint's factual allegations must be enough to raise a right to relief above the speculative level, meaning the complaint must contain allegations plausibly suggesting, not merely consistent with, an entitlement to relief. *Virnich*, 664 F.3d at 212. "A claim has facial plausibility when the plaintiff pleads 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Virnich*, 664 F.3d at 212, quoting *Iqbal*, 556 U.S. at 678.

While, in reviewing a plaintiff's claim, the court must accept the well-pleaded facts in the complaint as true and draw all reasonable inferences in the plaintiff's favor,

9

the court is not bound to accept legal conclusions as true, and conclusory allegations merely reciting the elements of the claim are similarly not entitled to the presumption of truth. *Burger v. County of Macon*, 942 F.3d 372, 374 (7th Cir. 2019); *Virnich*, 664 F.3d at 212.

<u>Extraterritoriality Doctrine</u>

Defendant first argues that Illinois' extraterritoriality doctrine bars Plaintiffs Robidoux and Bain from pursuing BIPA claims because those claims "are based on allegations of collection beyond Illinois." Defendant argues that because neither Robidoux nor Bain interacted with Defendant in Illinois in any way, the "transactions" in which their voiceprints were collected cannot be said to have occurred in Illinois. This is so "even if Robidoux's and Bain's fanciful allegations that their voice recordings were transported to Illinois and their biometrics extracted could be believed," as "they are precluded from bringing claims under BIPA because the underlying transaction did not take place in Illinois."

Plaintiffs respond that Defendant violated BIPA in Illinois because the "circumstances relating to the violations occurred primarily and substantially within Illinois." Specifically, Plaintiffs refer to their voices being recorded at the drive-through, using technology operated from Defendant's headquarters in Illinois, and collected, also using technology operated from Defendant's headquarters in Illinois. The voiceprints were then extracted and stored in a vast electronic database at Defendant's Illinois headquarters. Plaintiffs essentially allege that, while Robidoux's and Bain's interactions with Defendant's drive-throughs occurred out of state, all the actual technological interactions that led to their biometric data being collected and then

10

used without their consent was done via technology being operated from Illinois. In the alternative, Plaintiffs argue that, to the extent the court cannot definitively resolve this question at the pleadings stage, it should leave resolution until summary judgment after discovery has been conducted.

"In Illinois, 'a statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute.'" *Davis v. Jumio Corp.*, 2023 WL 2019048, at *6 (N.D. Ill. Feb. 14, 2023), quoting *Avery v. State Farm Mutual Automobile Insurance Co.*, 835 N.E.2d 801, 852 (Ill. 2005) (internal quotation marks and citations omitted). Here, following the lead of the majority of courts to consider the issue, the parties agree that BIPA does not apply extraterritorially. See *Davis*, 2023 WL 2019048, at *6 (collecting cases). Therefore, for BIPA to apply to Defendant's conduct, "the circumstances relating to the disputed transaction must have occurred 'primarily and substantially in Illinois.'" *Davis*, 2023 WL 2019048, at *6, quoting *Avery*, 835 N.E.2d at 853-54. "Yet 'there is no single formula or bright-line test for determining whether a transaction occurs within this state. Rather, each case must be decided on its own facts.'" *Davis*, 2023 WL 2019048, at *6, quoting *Avery*, 835 N.E.2d at 854. "Relevant factors include 'the residency of the plaintiff, the location of harm, communications between parties (where sent and where received), and where a company policy is carried out.'" *Davis*, 2023 WL 2019048, at *6, quoting *Rivera v. Google Inc.*, 238 F.Supp.3d 1088, 1101 (N.D. Ill. 2017), citing *Avery*, 835 N.E.2d at 854.

Based on the court's review of the relevant district court cases applying Illinois' extraterritoriality doctrine with respect to BIPA, the instant case is relatively unique. Most cases involve Illinois plaintiffs interacting in Illinois with an out-of-state company, whereas this case involves (for the extraterritoriality issue) out-of-state plaintiffs transacting out of state with an Illinois-based company. At first blush, it would appear that the extraterritoriality doctrine would bar BIPA's application to the out-of-state plaintiffs as, generally, "it is reasonable to infer that the General Assembly contemplated BIPA's application to individuals who are located in Illinois, even if some relevant activities occur outside the state." *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1276 (9th Cir. 2019). Still, whether a plaintiff is located in Illinois is just one factor that courts consider in determining whether a transaction occurs in Illinois for extraterritoriality purposes. See *Davis*, 2023 WL 2019048, at *6; *Trio v. Turing Video, Inc.*, 2022 WL 4466050, at *9 (N.D. Ill. Sept. 26, 2022) (residency of the plaintiff "is but one factor to consider and likely would not suffice without more"). Courts also look to the location of the harm and where company policy is carried out, and here Plaintiffs have alleged that the extraction, collection, analysis, and use of their voiceprints all occurred at Defendant's headquarters in Illinois. See *Davis*, 2023 WL 2019048, at *6.

Some courts have found allegations about a transaction's connection to Illinois to be so lacking and conclusory that they have dismissed BIPA actions due to the extraterritoriality doctrine. See *Campana v. Nuance Communications, Inc.*, 2024 WL 2809838, at *2 (N.D. Ill. Mar. 8, 2024); *Neals v. PAR Technology Corp.*, 419 F.Supp.3d 1088, 1091-92 (N.D. Ill. 2019). However, many other courts have found such Rule 12(b)(6) dismissal inappropriate and deferred ruling on this question until the summary

12

judgment stage, due to the highly fact-based analysis required to apply the doctrine. See *Vance v. International Business Machines Corp.*, 2020 WL 5530134, at *3 (N.D. Ill. Sept. 15, 2020); *Rivera*, 238 F.Supp.3d at 1101-02; *Trio*, 2022 WL 4466050, at *9; *Deyerler v. HireVue, Inc.*, 2024 WL 774833, at *4 (N.D. Ill. Feb. 26, 2024); *Davis*, 2023 WL 2019048, at *7.

The court finds the latter option to be the most prudent course of action. The court at this point denies Defendant's Motion to Dismiss based on the extraterritoriality doctrine, but, in doing so, acknowledges that discovery may reveal that the connection to Illinois is sufficiently tenuous as to warrant revisiting the matter at the summary judgment stage. See *Davis*, 2023 WL 2019048, at *7.

Dormant Commerce Clause

Defendant next argues that BIPA, as applied in this case, violates the Dormant Commerce Clause of the U.S. Constitution. However, "[l]ike the extraterritoriality doctrine, courts have repeatedly rejected the argument that the Dormant Commerce Clause prevents BIPA's application to out-of-state [parties] at the motion to dismiss stage and held that the issue is more properly addressed on a motion for summary judgment." *Vance*, 2020 WL 5530134, at *4, citing *Rivera*., 238 F.Supp.3d at 1104; *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *7-8 (N.D. Ill. Sept. 15, 2017); *Karling v. Samsara, Inc.*, 610 F.Supp.3d 1094, 1101-02 (N.D. Ill. 2022). "In *Rivera*, for example, the Court held, 'this is not the stage at which to assess these arguments in detail.... Whether [BIPA] is nevertheless being summoned here to control commercial conduct wholly

13

outside Illinois is not possible to figure out without a better factual understanding of what is happening in the [Defendant's] face-scan process.'" *Vance*, 2020 WL 5530134, at *4, quoting *Rivera*, 238 F.Supp.3d at 1104.

The court believes that summary judgment is the more appropriate time to determine whether the Dormant Commerce Clause bars Plaintiffs' claims. The court needs more detailed facts regarding Defendant's processes to know the extent to which Defendant's actions occurred in Illinois and whether the Dormant Commerce Clause bars this suit. See *Vance*, 2020 WL 5530134, at *4.

Merits of BIPA Claims

Defendant next argues that Plaintiffs' §§ 15(a) and (b) BIPA claims should be dismissed because the SAC fails to allege that Defendant took an "active step" to collect Plaintiffs' biometric information. Defendants also argue that Plaintiffs' § 15(a) claim should be dismissed because the SAC does not provide any intelligible basis upon which to find Defendant possessed Plaintiffs' biometrics.

**Active Step**

Defendant argues that BIPA requires that a plaintiff allege that the defendant "took an 'active step'" to collect their biometric information, and that Plaintiffs have failed to sufficiently allege such an active step in this case. Defendant argues that Plaintiffs attempt to plead around this deficiency by describing a process for the collection of biometrics without describing how that process relates to Defendant and without providing any support for their assertions, rendering the allegations "entirely implausible" and lacking the specificity that other courts have found meet the *Iqbal* and *Twombly* standards for BIPA claims. Specifically, Defendant notes that Plaintiffs never

14

allege what technology Defendant used to conduct voiceprint collections, and that Plaintiffs never provide details as to how the generic process described in the SAC is specific to Defendant or how it actually works.  The allegations could describe *any* biometric capture process, and there is no mention of a specific patent or technology utilized by Defendant.

Moreover, Defendant argues, the entire process described by Plaintiffs is implausible, in that it alleges that a drive-through customer has their voice recording sent to Illinois, where the voiceprint is extracted "from that recording at the same time as those biometrics were being compared to the entire database of previous recordings, so that they could be served with marketing materials that would allow them to add additional items to their order all before they finished giving the order that was supposedly being recorded to facilitate this entire process in the first place."  Defendant contends that this "convoluted tale strains credulity and is seemingly conjured from Plaintiffs' collective imagination."

Plaintiffs respond that § 15(b) of BIPA does not impose a "limitation that the collection, capture, purchase, receipt through trade, or 'otherwise obtaining biometric information' be 'active.'" Rather, the statute only applies "to private entities which merely 'collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric information."  Plaintiffs argue that § 15(b)'s notice and consent obligations accrue to any collector of biometric information not otherwise covered by an express statutory exemption, and that the SAC is clear and unequivocal as to what Defendant did to collect their biometric information.  Plaintiffs also argue that

15

Defendant's "implausibility" argument should be discounted, because in evaluating a complaint under Rule 12(b)(6), the court must take all well-plead allegations as true and draw all reasonable inferences therefrom in Plaintiffs' favor.

Section 15(a) of BIPA mandates that any private entity "in possession of biometric identifiers or biometric information" develop a written policy establishing a retention and destruction schedule for that data and make said written policy available to the public. 740 Ill. Comp. Stat. 14/15(a). Section 15(b) of BIPA mandates that no private entity may "collect, capture, purchase, receive through trade, or otherwise obtain" a person's biometric identifiers or information without (1) informing the person in writing that the data is being collected or stored, (2) informing the person of the purpose and length of time for which the data will be stored, and (3) obtaining a written release from the person. 740 Ill. Comp. Stat. 14/15(b). The definition of "biometric identifier" provided in BIPA includes "voiceprint." 740 Ill. Comp. Stat. 14/10.

Before going any further, the court must address the meaning of "active step" in the context of Defendant's argument, as to which the parties disagree. "A violation of § 15(b) of BIPA requires 'an active step to "collect, capture, purchase, receive through trade, or otherwise obtain" biometric data.'" *Powell v. Shiseido Americas Corp.*, 2022 WL 19914948, at *5 (C.D. Ill. Aug. 22, 2022), quoting *Heard v. Becton, Dickinson & Co.*, 440 F.Supp.3d 960, 966 (N.D. Ill. 2020), quoting 740 Ill. Comp. Stat. 14/15(b).

Most of the cases dealing with the "active step" issue concern third-party vendors of the biometric information-collecting technology arguing that they were not

actually involved in the information's collection, and that they just provided the technology and that the BIPA-violating actions were undertaken by the entity to whom they provided the technology.  See *Powell*, 2022 WL 19914948, at *5 (discussing cases).

Defendant's "active step" argument does not go to whether Defendant actively (as the entity employing the voiceprint-collecting technology) or passively (as a third-party vendor who merely sold or provided the technology to the voiceprint-collecting entity) collected Plaintiffs' voiceprints without providing notice and obtaining consent. Rather, Defendant's argument goes more to the level of detail, or lack thereof, regarding the technology at issue in Plaintiffs' SAC.

As an initial matter, the court must reject Defendant's argument as to the plausibility of the alleged capture and use of Plaintiffs' voiceprints.  The scheme described by Plaintiffs may have seemed like science fiction as little as ten years ago, but the rapid development of such technology, powered by ever-increasingly powerful artificial intelligence, moves such scenarios from the realm of science fiction to the increasingly plausible.  The court is by no means an expert on this technology, but the type of technology described herein has been recognized as plausible by other courts and indeed has been deployed by the defendants in those cases.[1]  See, e.g., *Carpenter v. McDonald's Corp.*, 580 F.Supp.3d 512 (N.D. Ill. 2022); *Delgado v. Meta Platforms, Inc.*, 2024 WL 818344 (N.D. Cal. Feb. 27, 2024).  So, Defendant's issue with Plaintiffs' SAC is not

---

[1]The court would also note that Defendant somewhat mischaracterizes Plaintiffs' allegations to a certain extent as to how Defendant utilizes the captured voiceprints. Plaintiffs do not appear to allege that Defendant used the collected voiceprint to market further items to Plaintiffs' during the same drive-through transaction in which the voiceprint was *initially* captured, but rather employed this process during *subsequent* visits to the drive-through by the same Plaintiff once the system recognized the voice from the previous visit.

17

whether it is plausible that the technology and marketing scheme described in the SAC *could* exist and be employed by Defendant, but rather whether there is enough detail in the SAC to give the court an indication that it is plausible that Defendant *actually* utilized such technology in capturing Plaintiffs' voiceprints. In other words, Defendant is arguing that Plaintiffs' SAC is so lacking in detail as to the alleged technology at issue that there is no indication that Defendant is even employing *any* technology to collect voiceprints *at all*. Defendant argues that they are not engaging in any of the behavior alleged in the SAC, and that Plaintiffs are making up the allegations out of whole cloth, such that Plaintiffs' allegations (made "upon information and belief") are complete speculation or conjecture with no grounding in reality.

"Generally, a federal court lacks subject matter jurisdiction to consider claims that are 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Liu v. Central Intelligence Agency*, 2018 WL 11304203, at *2 (C.D. Cal. May 9, 2018), quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998) (citations and internal quotations omitted); *Hagans v. Lavine*, 415 U.S. 528, 537 (1974) (court lacks subject matter jurisdiction over claims that are "essentially fictitious," "obviously frivolous" or "obviously without merit").

This is not one of those cases. Even after *Twombly* and *Iqbal*, "[a] plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (cleaned up). While it is true that

18

Plaintiffs' SAC lacks details about the specific technology allegedly employed when compared to other cases, see *Delgado*, 2024 WL 818344, at *5-6 (discussing a patent the defendant filed describing voiceprint technology and a privacy notice the defendant issued to users about using users' voiceprints to identify them),- and *Carpenter*, 580 F.Supp.3d at 517 (describing technology at McDonald's similar to that alleged here but also noting that McDonald's had purchased a company that developed said technology and included the patent for the technology), the court finds, as described above, that Plaintiffs' allegations are plausible, if not particularly detailed.  Moreover, the fact that Plaintiffs plead some of the facts "upon information and belief" does not change that analysis.  See *Delgado*, 2024 WL 818344, at *5.

 The court finds that Plaintiffs' allegations, taken together as true and drawing all reasonable inferences in Plaintiffs' favor, provide enough detail to Defendant about its alleged BIPA violations to put it on notice of what the claim is and the grounds upon which it rests.  As in *Carpenter* and *Delgado*, based on the facts pleaded in the SAC, it is reasonable to infer—though far from proven—that Defendant's technology mechanically analyzes customers' voices in a measurable way such that Defendant has collected a voiceprint from Plaintiff and other users without providing adequate notice and obtaining consent.  See *Delgado*, 2024 WL 818344, at *7; *Carpenter*, 580 F.Supp.3d at 517.  Whether or not Defendant actually deploys the technology described in the SAC may be appropriately litigated down the line.  See *Delgado*, 2024 WL 818344, at *7.

Therefore, the court denies Defendant's Motion on this ground as to both the § 15(b) claim and the § 15(a) claim, since the basis for Defendant's Motion was the same as to both subsections.

The court acknowledges the thinness of Plaintiffs' allegations, and though they survive Rule 12(b)(6) dismissal, they do so just barely.  Defendant argues that it is not employing any kind of program like that alleged by Plaintiffs, that Plaintiffs' allegations are entirely fictional (hence their lack of specific detail as to the technology employed), and that it would be unjust to allow this case to proceed to discovery and allow Plaintiffs to engage in a fishing expedition for evidence they will never find.

To that end, the court reminds the parties that, under Federal Rule of Civil Procedure 56(b) a litigant may file a motion for summary judgment at any time until 30 days after the close of all discovery.  Fed. R. Civ. P. 56(b).  If there are facts that are unavailable to the nonmovant that are essential to justify its opposition to the motion, the nonmovant may file a motion under Rule 56(d) showing by affidavit or declaration that, for specified reasons, it cannot present those facts.  The court may then defer considering the motion or deny it, allow time to obtain affidavits or declarations or to take discovery; or to issue any other appropriate order.  Fed. R. Civ. P. 56(d).

However, "[t]he mere fact that discovery is incomplete is not enough to prevent summary judgment."  *Smith v. OSF Healthcare System*, 933 F.3d 859, 864 (7th Cir. 2019).  "A party seeking relief under Rule 56(d) must show by affidavit or declaration specific reasons discovery should be extended, which requires more than a fond hope that more

fishing might net some good evidence." *Smith*, 933 F.3d at 864. "In addition, a court need not delay decision on a summary judgment motion to allow time for discovery on an obviously meritless claim or defense." *Smith*, 933 F.3d at 864-65.

Thus, if Defendant believes Plaintiffs' claims to be completely without merit and lacking any evidentiary basis, it may file the appropriate motion at the appropriate time.[2]

IT IS THEREFORE ORDERED:

(1)     Defendant's Motion to Dismiss (#16) is DENIED.

(2)     The clerk is directed to reopen this case, and the matter is referred back to the magistrate judge for further proceedings in accordance with this Order.

ENTERED this 17th day of July, 2024.


s/ COLIN S. BRUCE
U.S. DISTRICT JUDGE

---

[2]The court further reminds the parties that a motion for summary judgment, even if filed before discovery is conducted or completed, must still be based on properly supported assertions of material fact. See *Creech v. Navient*, 2022 WL 541230, at *2 (N.D. Ind. Feb. 23, 2022).