UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ISAAC FOSTER, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 25 C 2101 |
| v. | ) ) | Judge Sara L. Ellis |
| SERVICE SANITATION, INC., | ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Isaac Foster applied to work for Defendant Service Sanitation, Inc. ("SSI"). As part of the application process, SSI required Foster to undergo a physical examination, a part of which allegedly addressed family medical history. Foster alleges that by requiring him to disclose his family medical history during the required physical examination, SSI violated the Illinois Genetic Information Privacy Act ("GIPA"), 410 Ill. Comp. Stat. 513/1 *et seq*. Foster seeks to represent both a nationwide and Illinois class of individuals subjected to the same examination by SSI. SSI has moved to dismiss Foster's claim pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, to strike the nationwide class allegations. Because Foster has sufficiently alleged a GIPA claim and the Court finds it premature to strike the nationwide class allegations, the Court denies SSI's motion to dismiss.

## BACKGROUND[1]

SSI, a portable sanitation company, is incorporated in Illinois. Foster states that SSI's headquarters are in Illinois, while SSI represents it has its headquarters in Indiana. SSI has locations in Illinois, Indiana, and Wisconsin.

As part of its hiring process, SSI requires applicants to undergo a physical examination and answer questions about their family medical history. According to Foster, SSI devised and implemented its hiring policy, including the requirement of a physical examination, at its headquarters in Illinois. SSI does not instruct applicants of their right not to answer questions regarding their family medical history.

Foster applied for a job with SSI in Illinois in May 2024. SSI required Foster to submit to a physical examination, during which a third-party medical examiner questioned Foster about his family medical history, specifically whether family members had a history of diabetes, heart disease, kidney disease, and other medical conditions. Foster provided the requested information about his family history. The documents submitted by the third-party medical examiner to SSI indicate that the medical examiner did not perform a physical, Foster had a negative drug screen, and Foster passed the physical ability test.

---

[1] The Court takes the facts in the background section from Foster's complaint and presumes them to be true for the purpose of resolving SSI's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). SSI attached Foster's physical examination results to the motion to dismiss. Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may consider documents that "are central to the complaint and are referred to in it," *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Foster argues that the Court should not consider these documents because he has not referred to them in his complaint, they are not central to his claim, and they require discovery to authenticate. Although Foster disputes the completeness of these documents, the Court finds it appropriate to consider the documents at this stage. Nonetheless, the Court takes into account Foster's arguments about what the documents show and their relevance to his claim, which does not rule out verbal questions about his medical history. *See Short v. MV Transp., Inc.*, No. 24 CV 3019, 2025 WL 755795, at *2 (N.D. Ill. Mar. 10, 2025) (considering medical forms that the defendant attached to its motion to dismiss despite the plaintiff's objection that his claim was based on an oral request that would not be reflected in the forms, noting that "all [the forms] demonstrate is that Short was subject to a medical evaluation.").

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

**I.      Sufficiency of the Allegations**

Enacted in 1998, GIPA "regulates the use of genetic testing information in both the medical and commercial settings." *Bridges v. Blackstone, Inc.*, 66 F.4th 687, 688 (7th Cir. 2023). Foster contends that SSI violated Section 25(c)(1) of GIPA, which provides that an employer "shall not directly or indirectly . . . solicit, request, [or] require . . . genetic information of a person or a family member of the person . . . as a condition of employment [or] preemployment application." 410 Ill. Comp. Stat. 513/25(c)(1). SSI argues that family medical history does not constitute "genetic information" and that, even if it does, Foster has not sufficiently alleged that SSI solicited his genetic information in violation of GIPA. The Court considers these arguments in turn.

A. **Meaning of Genetic Information**

First, the Court considers SSI's contention that family medical histories do not amount to protected genetic information. GIPA defines "genetic information" by reference to the definition in the Health Insurance Portability and Accountability Act ("HIPAA"). 410 Ill. Comp. Stat. 513/10. HIPAA defines "genetic information" to include:

> (i) The individual's genetic tests;
>
> (ii) The genetic tests of family members of the individual;
>
> (iii) The manifestation of a disease or disorder in family members of such individual; or
>
> (iv) Any request for, or receipt of, genetic services, or participation in clinical research which includes genetic services, by the individual or any family member of the individual.

45 C.F.R. § 160.103.

SSI argues that not all family medical history amounts to "genetic information," and that instead, GIPA applies only to family genetic testing information that someone could use to determine the applicant's likelihood to develop a genetic disease. A number of courts in this district have recently addressed this same question. Several have concluded that "genetic information" only includes "family members' diseases or disorders that suggest another family member's genetic predisposition to the condition." *McKnight v. United Airlines, Inc.*, No. 23-CV-16118, 2024 WL 3426807, at *2–3 (N.D. Ill. July 16, 2024); *see also Ginski v. Ethos Seafood Grp., LLC*, No. 1:23-CV-16402, 2024 WL 4265249, at *8 (N.D. Ill. Sept. 23, 2024) (adopting *McKnight*'s reasoning); *Taylor v. Union Pac. R.R. Co.*, No. 23-CV-16404, 2024 WL 3425751, at *5 (N.D. Ill. July 16, 2024) (same). Others have read the definition more broadly, concluding that "[a]ny request for family medical history is a request for genetic information under GIPA." *Henry v. AbbVie, Inc.*, No. 23 CV 16830, 2024 WL 4278070, at *6 (N.D. Ill.

4

Sept. 24, 2024); *see also Million v. Hosp. Sisters Health Sys.*, No. 24-cv-3357, 2025 WL 1415766, at *3–4 (C.D. Ill. May 15, 2025) (collecting cases); *Branson v. Caterpillar, Inc.*, No. 23-CV-14329, 2024 WL 3823157, at *3 (N.D. Ill. Aug. 14, 2024) ("A request for an employee's family medical history, even without explicit reference to a disease or disorder suggesting genetic predisposition, is a request for genetic information under GIPA."). The Court agrees with the broader interpretation used by the *Henry* and *Branson* courts. Although GIPA does not protect employees' medical histories but only their genetic tests, it more broadly protects family members' medical history, defining "genetic information" to include not only family members' genetic tests but also "the manifestation of a disease or disorder in family members." 45 C.F.R. § 160.103. The definition has no limiting language indicating that the disease or disorder must be an inheritable disease. *See* EEOC Final Rule on Title II of the Genetic Information Nondiscrimination Act of 2008, 75 Fed. Reg. 68915 (Nov. 9, 2010) (rejecting inclusion of "inheritable" before "disease or disorder" in the regulation based on the plain language of the statute and compliance and enforcement concerns). In other words, "[a] disease or disorder that would not be considered genetic information as it pertains to an individual could still be protected genetic information if it manifests in their family members because of its possible use as an impermissible proxy." *Henry*, 2024 WL 4278070, at *6.

But even adopting the narrower definition used by the *McKnight* court, Foster's allegations would suffice. Foster alleges that SSI required him to provide information about a family history of diabetes, heart disease, and kidney disease. Courts have treated these conditions as genetic information even under the narrower definition. *See Ginski*, 2024 WL 4265249, at *8 ("history of high blood pressure, cancer, diabetes, heart disease" qualified as genetic information under GIPA because it might suggest the employee's predisposition to such

5

conditions); *McKnight*, 2024 WL 3426807, at *3 (family history of "high blood pressure, cancer, diabetes, heart disease," "unlike the flu or a broken arm, might suggest Plaintiffs' own predispositions to contract them" and so qualified as "genetic information" under GIPA). The Court, therefore, finds that Foster has adequately alleged that the family health history questions SSI allegedly required him to answer constitute "genetic information" under GIPA.

B.   **Intentional Solicitation**

Alternatively, SSI argues that Foster has not sufficiently alleged that SSI intentionally solicited genetic information from him as a condition of employment.[2] But SSI asks for too much from Foster at the pleading stage, wanting evidence instead of merely plausible allegations. *See Iqbal*, 556 U.S. at 678; *Castillo v. Snyders*, 497 F. Supp. 3d 299, 302 (N.D. Ill. 2020) (federal pleading standards do not require evidentiary support).

SSI contends that the documents that it attached to its motion undermine Foster's claims because they show that SSI did not request any genetic information or family medical history from Foster. True, the procedure summary document that SSI received from the third-party medical examiner does not include any references to family medical history or other genetic information and suggests that it only performed a drug screen and a physical ability test. But Foster's complaint does not specify how SSI asked the questions, allowing the inference that the

---

[2] The Court does not understand SSI's argument to be that Foster has not sufficiently alleged intentional action for purposes of obtaining enhanced damages. To the extent that it does extend to this issue, the Court does not find that a plaintiff must allege a specific mental state at the pleading stage. Rule 8 does not require a plaintiff to plead damages with particularity and instead only requires "a demand for the relief sought." Fed. R. Civ. P. 8(a)(3). As in cases alleging violations of the Biometric Information Privacy Act ("BIPA"), a defendant's mental state does not go to the underlying substantive GIPA violation but rather only impacts a plaintiff's recovery. *See Ginski*, 2024 WL 4265249, at *10 (a plaintiff need not allege any specific mental state to state a GIPA claim, analogizing to BIPA cases); *McKnight*, 2024 WL 3426807, at *7 (because Section 25(c)(1) "does not limit actionable claims to 'intentional or reckless' ones," Plaintiffs need not allege facts showing an entitlement to enhanced damages at the pleading stage); *see also Smith v. Signature Sys., Inc.*, No. 2021-CV-02025, 2022 WL 595707, at *5 (N.D. Ill. Feb. 28, 2022) ("[A]llegations of scienter or no, [the] complaint states a plausible claim for relief under [BIPA]; Rule 12(b)(6) does not require her to plead the facts that will determine the amount of actual damages she may be entitled to recover." (second alteration in original) (citation omitted)).

medical examiner verbally asked Foster questions about his family medical history. The fact that the information transmitted to SSI does not reflect such questions, which SSI argues shows that it did not gather such information, makes no difference. GIPA prohibits an employer from even requesting such information. 410 Ill. Comp. Stat. 513/25(c)(1); *see Ginski*, 2024 WL 4265249, at *6–7 (rejecting argument that a plaintiff must show harm or discrimination based on use of genetic information in order to state a claim under Section 25(c)(1)); *Henry*, 2024 WL 4278070, at *7 (violation of Section 25(c)(1) "does not require any use of the information requested").

As for SSI's argument that it cannot be liable for any inadvertent requests made by the third-party medical examiner, GIPA prohibits employers from "directly or *indirectly*" requesting genetic information. 410 Ill. Comp. State. 513/25(c) (emphasis added); *see Collins v. NTN Bearing Corp. of Am.*, No. 1:24-CV-6726, 2025 WL 552465, at *2 (N.D. Ill. Feb. 19, 2025) (rejecting argument that employer was "outside of GIPA's reach because a third party completed the examination" and the complaint did not include allegations that the employer "directed the third-party provider to inquire about an employee's family medical history," knew the third-party provider asked such questions, or received genetic information following the examination). While GIPA contains an exception for inadvertent requests for family medical history, 410 Ill. Comp. Stat. 513/25(g), this exception amounts to an affirmative defense that Foster need not anticipate in his complaint, *Henry*, 2024 WL 4278070, at *7–8. His allegations that the medical provider asked about his family medical history, and specifically about diabetes, heart disease, and kidney disease, suffice at this stage to allow his Section 25(c)(1) claim to proceed.

**II.     Motion to Strike Nationwide Class Allegations**

Alternatively, SSI asks the Court to strike the nationwide class allegations. Under Rule 23(c)(1)(A), the Court must determine whether to certify a class "[a]t an early practicable time."

Fed. R. Civ. P. 23(c)(1)(A). Rule 23(d)(1)(D) provides the Court with the ability to require the pleadings to be amended to remove class action allegations. Fed. R. Civ. P. 23(d)(1)(D). Motions to strike class allegations at the pleading stage are appropriate where it is clear from the pleadings that the class claims are defective. *See Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) (court "need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination"). But if the issues concerning class certification are factual, requiring discovery to determine whether certification is appropriate, a motion to strike class allegations at the pleading stage is premature. *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014). Unlike with a motion for class certification, on a motion to strike class allegations, the defendant, as the movant, bears the burden of persuasion. *Rysewyk v. Sears Holdings Corp.*, No. 15 CV 4519, 2015 WL 9259886, at *8 (N.D. Ill. Dec. 18, 2015).

In his complaint, Foster seeks to represent both a nationwide and Illinois class of individuals subjected to pre-employment medical testing by SSI. SSI argues that the Court should strike the nationwide class allegations because GIPA does not apply extraterritorially and so individuals without a connection to Illinois cannot pursue a GIPA claim. Under Illinois law, "a statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184–85 (2005) (citation omitted). Indeed, the parties agree that GIPA does not apply extraterritorially. *See McKnight*, 2024 WL 3426807, at *5 ("GIPA does not contain an express provision extending its application extraterritorially, so it does not have extraterritorial effect.").

But Foster argues that GIPA can nonetheless apply to individuals outside of Illinois, with it premature to determine whether GIPA should apply extraterritorially in this case. In order to

8

apply to individuals outside of Illinois, "the circumstances that relate to the disputed transaction [must have] occur[red] primarily and substantially in Illinois," with "each case . . . decided on its own facts." *Avery*, 216 Ill. 2d at 187. Here, Foster has alleged that SSI created and implemented its hiring policy, including the requirement of a physical examination that included questions about family medical history, at its headquarters in Illinois. He also alleges that SSI failed to inform him and other potential employees that they should not provide genetic information pursuant to a uniform policy implemented by SSI from its headquarters, and that SSI oversaw the physical examination process from its headquarters in Illinois. SSI, however, maintains that it has its headquarters in Indiana, not Illinois, undermining Foster's allegations of a substantial connection to Illinois. Given the competing allegations, the Court does not find it appropriate to resolve this "highly-fact bound inquiry" at this stage. *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009). While the parties dispute the location of SSI's headquarters, Foster has submitted some support for his contention that for at least part of the class period, SSI had its headquarters in Illinois. While discovery may prove otherwise, at this point, Foster has alleged enough to suggest a substantial connection to Illinois on behalf of non-Illinois individuals subjected to SSI's testing. *See McKnight*, 2024 WL 3426807, at *6 (refusing to apply extraterritoriality doctrine to GIPA claim brought by a Maryland plaintiff where the plaintiff alleged that the defendant solicited her information from its headquarters in Illinois and discovery was required to determine where the defendant's policy was carried out). Therefore, the Court does not find it appropriate to strike the nationwide class allegations and will allow Foster to proceed to discovery on them.

## CONCLUSION

For the foregoing reasons, the Court denies SSI's motion to dismiss [13].

Dated: August 14, 2025

                                                    SARA L. ELLIS
                                                    United States District Judge